MITCHELL ATTOE, and another, by their Guardian ad Litem, R. E. Johnson, and another, Appellants, v. RURAL MUTUAL INSURANCE COMPANY, Third-Party Plaintiff and Defendant-Respondent: MARY ANN ATTOE, Third-Party Defendant.

*No. 75-894. Submitted on briefs March 8, 1978.—*
*Decided May 2, 1978.*
(Also reported in 265 N. W. 2d 281.)

For the appellants the cause was submitted on the joint brief of *Glinski & Haferman* of Stevens Point, and *Johnson, Hansen & Shambeau* of Waupaca.

For the respondent the cause was submitted on the brief of *Arno J. Miller,* and *Miller & Miller* of Portage.

DAY, J.   This is an appeal from an amended judgment dismissing, after a jury verdict, the plaintiffs' automobile negligence complaint. The plaintiff-appellants (hereafter plaintiffs) are Mitchell and Mical Attoe who were minor passengers in the car driven by their mother, Mary Ann Attoe,[1] the third party defendant. Maurice Attoe, the children's father, was not involved in the accident, but is also a plaintiff-appellant seeking to recover for his children's medical expenses. Rural Mutual Insurance Company (hereafter company) is the defendant-respondent and third party plaintiff and was the insurer of Edwin Bartz, the deceased driver of the other automobile. The jury found Edwin Bartz five percent negligent and Mary Ann Attoe ninety-five percent negligent. Following motions after verdict the trial court granted judgment for the defendant and dismissed the complaint.

[1] Mary Ann Attoe is now known as Mary Ann Sonnenberg, but she will be referred to as Mrs. Attoe, her name at the time of the accident.

The only question on appeal is: Was there any credible evidence or reasonable inferences therefrom to support the jury's verdict that Edwin Bartz was five percent negligent? We agree with the trial court that there was not.

On the morning of October 6, 1967 Mary Ann Attoe was driving south on highway 22 with her two sons, the plaintiffs, as passengers. Mrs. Attoe was on her way to the teacher's college at Wautoma and was going to drop her sons off at school in Wild Rose. The weather was clear and sunny.

Mrs. Attoe testified that she looked at her speedometer approximately a quarter mile before the accident and that she was going fifty to fifty-five miles per hour.

Near the point where county highway "P" intersects with highway 22 Mrs. Attoe remembered seeing something which frightened her, but she did not remember what it was. She remembered seeing a big green dump truck coming up the hill toward her in the northbound lane. She did not know if it was the truck that frightened her.

Mrs. Attoe stated that there was a pink Rambler, ahead "a bit on the right," parked on the shoulder. Mrs. Attoe remembered that she was going to "take the shoulder." She saw the truck and the Rambler and thought she had to get off the road. She remembered putting on her brakes, but does not remember how the car reacted, and did not remember leaving the roadway on the right hand side.

Mrs. Attoe only saw the truck and the Rambler. Prior to the accident she never saw the Bartz car, with which she collided. After Mrs. Attoe put on her brakes the next thing she remembers is waking up in the hospital in Neenah.

Prior to the collision Mr. Bartz was driving northbound in a 1967 Dodge Dart. A northbound driver on

highway 22 in such a vehicle would have been able to see a car at the intersection of highway "P" and highway "22" from 1,008 feet south of that intersection.

In the area of the scene of the accident highway "22" is constructed of bituminous concrete (blacktop) and is twenty-two and one-half feet wide. There is ten feet of shoulder on either side of the paved road. There are sloping ditches on either side of the road and there is forty-nine feet of ditch between the shoulder and a power line on the east side of the road.

The exhibits and the testimony of a former police officer showed that the Attoe car left a twenty-four foot, ten inch diagonal skid mark on the pavement before entering the shoulder and another eighty-one foot, eleven inch mark on the western shoulder of the road south of the twenty-four foot, ten inch mark. There was also two skid marks of sixty-six feet, five inches and forty-four feet, seven inches on the pavement between the eighty-one foot, eleven inch mark and the impact area. The point of impact was in the northbound lane.

The Bartz car left a fifteen foot skidmark in the north-bound lane, south of the impact point, near the center line.

An accident reconstruction expert opined that the accident occurred when the left front of the Dodge struck the right door of Mrs. Attoe's Mustang. The force of the accident split the Attoe vehicle in half. The rear or passenger portion of the vehicle came to rest fourteen feet northeast of the impact area.

The jury found Mrs. Attoe ninety-five percent negligent and Edwin Bartz five percent negligent. The trial court granted judgment notwithstanding the verdict to the defendant and dismissed the plaintiffs' complaint.

The trial court, in its decision on motions after verdict, found that there was no credible evidence to show that Mr. Bartz was negligent and also found that Bartz was confronted with an emergency "not of his creation."

The plaintiffs' appeal from the amended judgment dismissing their complaint.

The trial court granted the defendant's motion for judgment notwithstanding the verdict and in effect found that Edwin Bartz was not negligent. The jury had found Bartz five percent negligent. Sec. 805.14(1), Stats. (1975), provides as follows,

"805.14. *Motions Challenging Sufficiency of Evidence; Motions After Verdict.* (1) *Test Of Sufficiency Of Evidence.* No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."

This statute is identical to earlier Wisconsin case law holding that a jury verdict should not be disturbed by a trial or appellate court if there was any credible evidence or reasonable inferences to support it. *Lehman v. Sentry Insurance Co.,* 35 Wis.2d 96, 98, 150 N.W.2d 333 (1967) ; *Braatz v. Continental Cas. Co.,* 272 Wis. 479, 76 N.W.2d 303 (1956). In *Braatz* this court discussed the jury drawing inferences from the evidence and stated,

"The rule is well established that if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned." *Braatz,* at 272 Wis. 484, quoting from *Trautman v. Charles Schefft & Sons,* 201 Wis. 113, 115, 228 N.W.2d 741 (1930).

Mr. Bartz is deceased and is presumed to have been exercising due care with respect to lookout and management and control. This presumption disappears from the case when evidence is introduced from which the jury may reasonably infer that the deceased was negligent with respect to lookout or management and control. *Wells v. Dairyland Mutual Ins. Co.,* 274 Wis. 505, 510, 80 N.W.2d 380 (1957) ; *Schramski v. Hanson,* 45 Wis.2d 698, 706, 173 N.W.2d 655 (1970).

To support the jury's verdict in this case it must be reasonably inferrable that Mr. Bartz was five percent negligent based on the layout of the road, the skid marks and Mrs. Attoe's extremely limited account of events preceding the accident. The road allowed for a view of a car near the intersection with "P" from 1,008 feet south of there. There was ten feet of shoulder and forty-nine feet of ditch on the east side of the road. It could be inferred from the skid marks that Mrs. Attoe skidded twenty-four feet, ten inches diagonally off the pavement onto the west shoulder, continued for eighty-one feet, eleven inches on the shoulder and swerved sixty-six feet, five inches back across the highway into the northbound lane to the point of impact. It may also be inferred that Mr. Bartz was in his own lane when he put on his brakes and skidded fifteen feet to the point of impact.

Mrs. Attoe testified that she saw a big green dump truck in the northbound lane coming toward her and a pink Rambler on the shoulder of the road to the right and in front of her "a bit." She was scared of something, but she did not know what and she wanted to take the shoulder. She remembers putting on the brakes, but nothing else, including how the car reacted.

In their briefs the plaintiffs recite these facts and infer that Mr. Bartz was on notice of a dangerous situation because of the Rambler and the truck. This conclusion

is more speculation than inference from fact. There was no evidence that the dump truck or the pink car presented any danger to Mrs. Attoe or anyone else. The dump truck was in its proper lane and the Rambler was parked on the shoulder of the road.

The plaintiffs infer that Mr. Bartz could see Mrs. Attoe skidding off the road and onto the shoulder. The layout of the road allowed for that view, but a vehicle, such as the dump truck could have obstructed Mr. Bartz's view. Mrs. Attoe saw the truck well enough to identify its type and color and did not see the Bartz car. This suggests that the truck was ahead of the Bartz car. The inference more favorable to the verdict is that Bartz was ahead of the dump truck, but there are not facts in evidence from which that inference can be made.

Even if Mr. Bartz had seen the Attoe car leave the road there was no evidence that Mrs. Attoe's maneuvers in leaving the road were a sign of immediate danger. There is no evidence of how the car acted when Mrs. Attoe put on the brakes. Exactly how the car reacted during this period is open to conjecture. Mr. Bartz was not put on notice of danger merely because Mrs. Attoe took to the shoulder of the road. There is nothing in the evidence from which it can be inferred that Mr. Bartz was negligent concerning lookout.

The only other possible basis for a finding of negligence must concern management and control. Bartz' possible fault here was not a failure to take evasive action because there was no evidence, direct or inferential, that he did not attempt to turn his car to avoid the accident. The Bartz skid mark was near the center line so it may only be inferred that Bartz did not try to evade Mrs. Attoe by going to his right.

The fifteen foot skid mark south of the impact area could be the basis for an inference that Bartz did not apply his brakes quickly enough. However, a fifteen

foot skid mark standing alone, devoid of supporting evidentiary circumstances does not allow the drawing of any inference. As has already been discussed, the Attoe skid marks do not by themselves show that Bartz was on notice of any danger. The fifteen foot Bartz skidmark, absent evidence of a dangerous situation does not support or allow the drawing of an inference of a finding of five percent negligence. This is especially true where the skid marks show that Mrs. Attoe swerved into Bartz's lane, from the shoulder, right before the collision.

There was no evidence presented in this case that would rebut the presumption that the deceased Mr. Bartz exercised due care concerning management and control, and lookout.

The trial court determined that Mr. Bartz was also not guilty of negligence because he was confronted with an emergency as a matter of law. We need not consider this issue because there was insufficient evidence to demonstrate that Mr. Bartz was negligent to begin with.

*By the Court.*—Judgment affirmed.